## UNITED STATES v. GRIFFIN.

District Court, S. D. Georgia,
Savannah Division.

Sept. 5, 1935.

136

A. B. Lovett, of Savannah, Ga., for defendant.

J. Saxton Daniel, U. S. Atty. and Julian Hartridge, Asst. U. S. Atty., both of Savannah, Ga., for the United States.

BARRETT, District Judge.

The indictment charges that the defendant "without being permitted so to do by any regulation made, adopted, and approved under authority of the Migratory Bird Treaty Act of July 3, 1918, did then and there hunt mourning doves on and over an area whereon had been placed cracked rice, designed, intended, and effective to bait, lure, attract, and entice such mourning doves, migratory game birds included within the terms of the Convention between the United States and Great Britain for the protection of migratory birds, concluded August 16, 1916; contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States."

The demurrer is as follows:

"1. Said indictment sets forth against this defendant no violation of a valid statute of the United States.

"2. The Migratory Bird Treaty Act of Congress of July 3, 1918, 40 Stat. 755 et seq., 16 U. S. Code § 703 et seq. [16 USCA § 703 et seq.], in so far as it attempts to make unlawful, and subject to criminal penalty, the hunting of migratory birds therein mentioned, 'unless and except as permitted by regulations made as hereinafter provided,' is unconstitutional, null and void, in that (a) it violates article 1, section 1 of the Constitution of the United States, which provided: 'All legislative powers herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and a House of Representatives,' (b) said Act attempts unlawfully to delegate legislative authority to the Executive Department of the United States, (c) no complete offence is defined by the terms of the statute and there is no ascertainable or definite standard of facts on which to base a criminal offence thereunder.

"3. The alleged offence charged in said indictment against this defendant is for the violation of a regulation promulgated by the Secretary of Agriculture of the United States, of the Executive department, approved by the President of the United States, and is not for a violation of an act otherwise forbidden by the Act itself or by the Migratory Bird Treaty between the United States of America and the United Kingdom of Great Britain and Ireland, ratified in 1916 [39 Stat. 1702].

"4. Said Act of Congress violates the Fifth Amendment of the Constitution of the United States reading as follows: 'No person shall be deprived of life, liberty, or property without due process of law', for that no complete offence is defined by statute, the same is too vague and indefinite to be capable of enforcement as to the facts in said indictment set out, and there is no ascertainable standard of guilt or innocence thereunder."

The treaty between the United States and Great Britain for the protection of migratory birds in the United States and Canada is dated December 8, 1916. The treaty included in "migratory birds" "columbidae or pigeons, including doves and wild pigeons." Article 1. The treaty makes no mention of "bait" or "baiting."

The treaty fixes a definite close season for migratory game birds "between March 10 and September 1" and contains this further provision: "The season for hunting shall be further restricted to such period not exceeding three and one-half months as the High Contracting Powers may severally deem appropriate and define by law or regulation." Article 2.

"Permits to kill any of the above-named birds which, under extraordinary conditions * * * may be issued by the proper authorities." Article 7.

"The High Contracting Powers agree themselves to take, or propose to their respective appropriate law-making bodies, the necessary measures for insuring the execution of the present Convention." Article 8.

The Migratory Bird Treaty Act of July 3, 1918 (USCA, title 16, §§ 703–711), executed to give effect to the foregoing treaty contained the following:

"Sec. 2. That unless and except as permitted by regulations made as hereinafter provided, it shall be unlawful to hunt, take, capture, kill, attempt to take, capture or kill, possess, offer for sale, sell, offer to purchase, purchase, deliver for shipment, ship, cause to be shipped, deliver for transportation, transport, cause to be transported, carry or cause to be carried by any means whatever, receive for shipment, transportation or carriage, or export, at any time or in any manner, any migratory bird, included in the terms of the convention between the United States and Great Britain for the protection of migratory birds concluded August 16, 1916 (39 Stat. 1702), or any part, nest, or egg of any such bird." 16 USCA § 703.

"Sec. 3. That, subject to the provisions and in order to carry out the purposes of the convention, the Secretary of Agriculture is authorized and directed, from time to time, having due regard to the zones of temperature and to the distribution, abundance, economic value, breeding habits, and times and lines of migratory flight of such birds, to determine when, to what extent, if at all, and by what means, it is compatible with the terms of the convention to allow hunting, taking, capture, killing, possession, sale, purchase, shipment, transportation, carriage, or export of any such bird, or any part, nest, or egg thereof, and to adopt suitable regulations permitting and governing the same, in accordance with such determinations, which regulations shall become effective when approved by the President." 16 USCA § 704.

"Sec. 6. That any person, association, partnership, or corporation who shall violate any of the provisions of said convention or of this act [sections 703 to 711 of this title], or who shall violate or fail to comply with any regulation made pursuant to this act [said sections], shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined not more than $500 or be imprisoned not more than six months, or both." 16 USCA § 707.

The regulations adopted by the Secretary of Agriculture under and in conformity with said act and approved by the President contained the following "Definition of Terms":

"Bait—Corn, wheat, oats or other grain, or products thereof, salt, or any kind of feed, by whomsoever placed, deposited, distributed, scattered, or otherwise put out, whereby mourning doves or waterfowl are lured, attracted, or enticed."

And under "Means by which Migratory Game Birds may be Taken":

"Mourning doves shall not be shot or otherwise taken by means of bait."

The principal question presented in this case is: Has Congress the right to delegate to the Secretary of Agriculture the authority to make penal the shooting of doves over a baited field when neither the treaty between the United States and Great Britain nor the act of Congress creates such offense?

The rule is well established and the question is one as to its application in this case.

The rule is stated thus in United States v. Grimaud, 220 U. S. 506, on page 521, 31 S. Ct. 480, 484, 55 L. Ed. 563:

"That 'Congress cannot delegate legislative power [to the President] is a principle universally recognized as vital to the integrity and maintenance of the system of government ordained by the Constitution.' Field v. Clark, 143 U. S. [649] 692, 12 S. Ct. 495, 36 L. Ed. [294] 309. But the authority to make administrative rules is not a delegation of legislative power, nor are such rules raised from an administrative to a legislative character because the violation thereof is punished as a public offense."

So far as I know there is no dissent from this rule and it is recognized, among other places, in Panama Refining Co. v. Ryan, 293 U. S. 388, at page 428, 55 S. Ct. 241, 252, 79 L. Ed. 446, in which we find this: "So, also, from the beginning of the government, the Congress has conferred upon executive officers the power to make regulations—'not for the government of their departments, but for administering the laws which did govern,'" citing United States v. Grimaud, supra, 220 U. S. 506, page 517, 31 S. Ct. 480, 55 L. Ed. 563, and the review of the question made in the said case is referred to approvingly, though without further discussion of the Grimaud Case, in A. L. A. Schechter Poultry Corp.

v. United States, 55 S. Ct. 837, 79 L. Ed. 1570, 97 A. L. R. 947, decided May 27, 1935.

The principle underlying the rule is thus stated in the Panama Refining Case, supra (headnote 8, 293 U. S. 388, page 390, 55 S. Ct. 241, 79 L. Ed. 446):

"Congress may lay down its policies and establish its standards and leave to selected instrumentalities the making of subordinate rules, within prescribed limits, and the determination of facts to which the policy, as declared by Congress, shall apply; but the constant recognition of the necessity and validity of such provisions, and the wide range of administrative authority which has been developed by means of them, cannot be allowed to obscure the limitations of the authority to delegate, if our constitutional system is to be maintained."

And again it is stated thus in the Schechter Case, supra (headnote 4):

"So long as a policy is laid down and a standard established by a statute, no unconstitutional delegation of legislative power is involved in leaving to selected instrumentalities the making of subordinate rules within prescribed limits and the determination of facts to which the policy as declared by the legislature is to apply."

Congress in this case surely lays down "its policies and establishes its standards," namely, the policy that there shall be no hunting of migratory birds except as may be permitted by the Secretary of Agriculture. The standard is that the means of hunting shall be "compatible with the terms of the Convention." The "due regard" is not without its limitations and does not permit the unlimited exercise of discretion. The "due regard" must have reference to "the zones of temperature and to the distribution, abundance, economic value, breeding habits, and times and lines of migratory flight of such birds."

It seems clear to me that this delegation is well within the prescribed rule referred to above.

The long line of authorities in reference to the delegation of power to the Interstate Commerce Commission in my opinion confirms the above interpretation.

The objection that this indictment violates that portion of the Fifth Amendment to the Constitution of the United States that "No person shall be ***deprived of life, liberty, or property, without due process of law" seems to me unfounded. The prohibition of hunting is general. The lawful right to hunt is only where there has been a permission granted by the Secretary of Agriculture. Permission to hunt doves over a baited field is affirmatively prohibited. Thus we have the act prohibiting hunting altogether unless permission be had, and not only an absence of that permission, but a positive prohibition by the Secretary of Agriculture that hunting in this way will not be allowed. As well might it be said that a crime was not charged if the Interstate Commerce Commission had established a definite requirement, the violation of which was unlawful, and the prosecution was brought on the ground of doing such act in violation of such mandate of the Commission.

The result is that the demurrer to the indictment is overruled in each and every part.